## In re EZRA W. MILLER.

[Filed June 14th, 1904.]

1. Any jurisdiction of the court of chancery, otherwise than under *P. L. of 1897 p. 190*, to permit the use of trust funds for the erection of a building on lands also held in trust by the trustee, cannot be exercised on a petition, but only on a bill.

2. A trustee should not be permitted to use trust funds, pursuant to the above-cited statute, to erect a building on lands held by him in trust, where the proof leaves it doubtful whether it will be beneficial to the trust.

---

On petition for leave to use trust moneys to erect a building.

*Mr. Anderson Price,* for the petitioner.

*Mr. Robert L. Lawrence,* for the defendants.

STEVENSON, V. C.

The petitioner having failed in a former application to this court (*In re Miller, 62 N. J. Eq. (17 Dick.) 764*) to obtain an order permitting him to expend trust moneys in his hands for the erection of a building in the place of one which was destroyed by fire, now comes with a new petition, presenting a plan for the erection of a far less expensive building, involving therefor the expenditure of a smaller amount of the trust funds. The report of the former proceeding in this court and in the court of errors and appeals sets forth the will of Ezra Miller, deceased, creating the trust and all the other facts necessary to be considered for the determination of this present application,

excepting the new and cheaper plan for the proposed building which the trustee has adopted and now urges upon this court for acceptance.

1. The opinion of the court of errors and appeals in the former case shows that some members of that court entertained "great doubt of the power of the chancellor as against the objection of owners *sui juris* to make such an order" as had been made by the court of chancery in that case. These doubts so fill my mind that if it were necessary for me to solve them I strongly incline to think that they would not be solved in favor of this petitioner. ·

2. The situation of the parties remains the same. The petitioner, having only one-fifth share as life tenant in the income of the property, is met by the united opposition of all his co-life tenants. While the statute under which this petition is filed (*P. L. of 1897 p. 190*) contemplates that the interests of remaindermen shall be scrupulously guarded, there seem to be strong grounds for holding that its entire beneficial purpose is confined to the case of the life tenants. It is the procurement of an adequate income from real estate by the erection, repair or improvement of buildings for the benefit of the parties who are entitled to this income that this statute seems to have in view. The united opposition of these defendants and their co-life tenants who side with them to have this experiment of erecting a new building ·tried for their benefit is certainly entitled to careful consideration from this court.

3. While I do not intend to discuss at length the various doubtful questions which an attempt to apply this statute to this particular case manifestly suggests, I think there is great force in the contention for the defendants that the petition does not present a case within the words of the statute under any fair and reasonable construction which can be placed upon these words. It is difficult to see how the statute covers this case unless the making of "additions" is to be construed so as to include the erection of additional buildings. The statute seems to contemplate the making of additions, repairs and improvements to existing buildings and the erection of new buildings

*in place* of buildings which already occupy the land. The grant of power to the chancellor to make an order "for the erection or erections of such new building or buildings as may be deemed advisable" by him is qualified by the state of facts under which the power is to be exercised. The power apparently is to be exercised by the chancellor for the relief of life tenants from certain disadvantageous conditions which are described. It is far from clear to my mind that any recognition is made in this statute of the disadvantage to a life tenant of having land remain unoccupied which might yield a rent if a building could be erected upon it. If such disadvantage is recognized by the statute, then it would seem to follow that a few small buildings on a large tract would justify the erection of a large number of expensive buildings, whereas without such pre-existing small buildings the land in no sense could be deemed "occupied" by a building or buildings, and the result would be that the statute would not apply.

The disadvantageous condition which the statute seems to recognize is that of land not unoccupied but already occupied by a building which yields an inadequate rent when the making of additions, repairs and improvements to such building or the substitution of an entirely new building in place thereof would bring about an increase of rental.

4. In view of the scope of the argument for the petitioner it is worth while to point out that the only jurisdiction which can be exercised on this petition is the jurisdiction conferred by this statute. If this court, under the facts set forth, or under any other facts, has jurisdiction to permit the petitioner to take $6,000 of the trust fund in his hands and expend it upon a building on the land which he also holds in trust apart from this particular statute, such jurisdiction can only be invoked by a bill.

5. The rule laid down by the court of errors and appeals (at *p. 768*) is that "where the proof leaves it doubtful that an improvement proposed under the act involved in this case will be beneficial to the trust, it should not receive judicial sanction."

Applying this perfectly plain rule to the petitioner's plan,

the plan must be condemned. I shall not set forth the facts. Instead of the large and comparatively expensive building which the petitioner formerly proposed to erect on these large foundations, his plan now is to build a cheap structure, involving an expenditure of less than a quarter of the amount which his former plan required. Formerly he asked· for $27,000, now he limits his experiment to $6,000. The testimony fails to satisfy me that the erection of this cheap building would utilize the improvements which the petitioner urges are now going to waste. That element of possible advantage is certainly less apparent in this plan than it was in the other.

I shall not, however, go into the details of this new experiment which the petitioner proposes to try by the expenditure of the trust funds in his hands. After a careful consideration of all the testimony, not only grave doubts as to the wisdom and prudence of this expenditure remain in my mind, but I may say that I cannot resist the conviction that the probabilities strongly favor the failure of the experiment rather than of its success.

The prayer of the petition will be denied.